IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| RAKEEM LEVON RHODES | § | |
| VS. | § | CIVIL ACTION NO. 9:21-cv-49 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Rakeem Levon Rhodes, proceeding *pro se*, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Petitioner was charged with capital murder in the 217th District Court of Angelina County, Texas, in cause number 2013-0395. Following a jury trial, Petitioner was convicted of 1st degree murder and sentenced to life imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Twelfth District. *Rhodes v. State*, No. 12-16-00341, 2018 WL 2112219 (Tex.App.–Tyler 2018). The Texas Court of Criminal Appeals refused a Petition for Discretionary Review. *Rhodes v. State*, PDR. No. 0628-18.

Petitioner subsequently filed a state Application for Writ of Habeas corpus. *Ex parte Rhodes*, Appl. No. 92,071-02. The Court of Criminal Appeals dismissed the Application for failing to comply with Texas Rule of Appellate Procedure 73.2, which permits dismissal of applications that do not comply with applicable rules.

Grounds for Review

Petitioner asserts the following grounds for review: (1) the trial court erred by admitting testimony concerning a pretrial identification and State's Exhibit 5; (2) the trial court erred by admitting Petitioner's cell phone records into evidence; (3) the trial court erred by allowing improper

and prejudicial impeachment evidence; and (4) there was insufficient evidence to support the conviction.

Evidence at Trial

The intermediate appellate court described the evidence at trial as follows:

> At trial, the evidence showed that late in the evening of June 12, 2013, Appellant and A. N. walked to the home of Albert Hodge. A.N. stayed behind while Appellant approached the door. Appellant knocked on the door, paused, and knocked again. When Hodge opened the door, Appellant pointed a gun at his chest and demanded money. Hodge refused to give Appellant any money, and instead started hitting Appellant with a pipe. Appellant fired the gun at Hodge about six times. He then took the money and keys from Hodge's pockets, unsuccessfully attempted to steal his car, and ran away. Hodge died at the hospital within hours of the shooting.

*Rhodes*, 2018 WL 2112219, at *1.

Analysis

*Second, Third and Four Grounds for Review*

In his Answer (doc. #8), the Respondent asserts this Petition should be dismissed as a "mixed" Petition. A mixed petition is one that contains both exhausted and unexhausted grounds for review. *Grace v. Vannoy*, 826 F.3d 813, 815 (5th Cir. 2016). A mixed petition is subject to dismissal. *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

Respondent states that Petitioner's second, third and fourth grounds for review are unexhausted because they were not properly presented to the Texas Court of Criminal Appeals. Petitioner did not raise his second, third and fourth grounds for review in his Petition for Discretionary Review. He did raise them in his state Application for Writ of Habeas Corpus. However, as stated above, the state Application was dismissed because it did not comply with Rule 73.2. A state application that is dismissed pursuant to Rule 73.2 is not considered to have been properly filed. *Wickware v. Thaler*, 404 F. App'x 856, 858 (5th Cir. 2010). As a result, Petitioner's second, third and fourth grounds for review have not been exhausted. *McGee v. Estelle*, 704 F.2d 764, 768 (5th Cir. 1983).

However, in his Reply (doc. #12), Petitioner acknowledged his second, third and fourth grounds for review were unexhausted and asked the court to only consider his first ground for

review.  As a result, Petitioner's second, third and fourth grounds for review shall be considered withdrawn.

*First Ground for Review*

A.  Standard of Review

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts.  *Id*. at 413. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable.  *Id*. at 409-411.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 102. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be."  *Id*.

In addition, this court must accept as correct any factual determination made by the state courts unless the presumption of correctness is rebutted by clear and convincing evidence.  28

U.S.C. § 2254(e).  The presumption of correctness applies to both implicit and explicit factual findings.  *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").  Deference to factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing.  *See Valdez*, 274 F.3d at 951.

B.  Application

Julian Parks testified at trial.  During the trial, Mr. Parks did not identify Petitioner as the person involved in the offense.  However, he did identify Petitioner when he spoke with a detective five days after the offense was committed.  During this conversation, Mr. Parks was shown, one at a time, pictures of five or six individuals.  These picture were admitted into evidence collectively as States's Exhibit 5.[1]  Mr. Parks told the detective he knew two of the six individuals.  The first picture shown Mr. Parks was a picture of Petitioner.  Mr. Parks identified Petitioner as being involved in the offense.

Petitioner complains about both the testimony regarding Mr. Parks's prior identification and the admission into evidence of State's Exhibit 5.  Petitioner contends that the identification made by Mr. Parks prior to trial was unreliable because the method used in connection with the pretrial identification was impermissibly suggestive.

In its opinion, the intermediate appellate court described the testimony of Mr. Parks as follows:

> Julian Parks testified that at the time of the murder, he lived with his grandparents in Hodge's neighborhood.  That night, he was sitting outside his home in his car when he heard a tap on the car.  He stepped out of the car to see what made the noise and saw two males, a shorter one and a taller one.  He warned them to be careful walking near his house so late because his grandfather was losing his mind and might shoot them.  The individuals walked away and Parks stopped paying attention to them.  Moments later, he heard gunshots.  Parks saw the taller individual standing in the distance.  He heard one more gunshot and saw the man run away.  Parks later identified Appellant from a photographic lineup as the tall man he saw that night.

---

[1]    State's Exhibit 5 consisted of six photographs (Doc. #9-12, pp. 16-27.).

*Rhodes*, 2018 WL 2112219, at *1 (footnote omitted).

The Due Process Clause prohibits identification testimony at trial that derives from impermissibly suggestive procedures which may lead to a mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 302 (1967). A two-step analysis applies to challenges to identification evidence. First, a court must determine whether "the identification 'was so impermissibly suggestive' as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Burbridge*, 252 F.3d 775, 780 (5th Cir. 2001) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). If so, a court must then determine whether, "under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification." *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990). The following factors are considered in determining whether an identification is reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty at the time of the confrontation and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

In rejecting this ground for review, the intermediate appellate court stated:

In this case, Parks testified that he gave a statement to the police on the night of the murder. Five days later, he went to the police station and was given six envelopes containing photographs of different men. Parks testified that a detective asked him, "[T]o the best of your recollection, are any of these people somebody you saw that night?" The detective gave him the envelopes containing the photographs one at a time. Parks said, "I guess at that point in time the first photo really resembled the taller guy that I seen that night." None of the men in the remaining photographs looked like anyone he saw that night.

Parks further testified that he knew "a couple" of the men in the lineup because they were from his hometown. He was thus able to automatically exclude them. After looking at all the photographs, Parks picked and signed the first one.

Appellant has not met his burden of showing by clear and convincing evidence that the procedure here was impermissibly suggestive. That Parks knew two or three of the six men in the lineup is certainly suggestive of the fact that none of these men was the criminal, but it is not suggestive of the fact that Appellant was the criminal as opposed to the remaining two or three men in the lineup. Each of the six photographs shows a young, fit African American man taking a picture of himself in the mirror. Nothing in the record shows that the police knew Parks was familiar with any of the men, so there is no indication the procedure was purposely suggestive. For these reasons, we hold that the identification procedure, while

5

somewhat suggestive, was not impermissibly so.

Furthermore, even assuming that the procedure was impermissibly suggestive, the totality of the circumstances does not indicate it was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. First, Parks had the opportunity to view the two individuals when he exited his car to confront them moments before the murder. He said that it was dark, but they were close, and he looked "right in [the taller man's] eyes." Parks also testified that he saw the two individuals a couple of time previously in his girlfriend's neighborhood.

Second, Parks testified that although he was unaware at the time he confronted the individuals that a crime was soon to occur, he was "cautious of something going on at [his] grandmother's house at 11:30 at night." This testimony tends to show that he likely paid a high degree of attention to the individuals he confronted.

Regarding Parks's level of uncertainty at the time of the lineup, he testified that the man in the first photo looked "very familiar," but he was not one hundred percent certain the man was the same man he saw at the scene. He could not see the man's hairstyle at the scene because the man wore a hoodie. However, the nose of the man in the photograph "looked familiar," and "the eyes were very familiar." The State asked Parks, "Do you remember telling the officer [on the day of the lineup] that you were certain, but you were scared because you had a man's life in your hands?" Parks responded as follows:

> Right. Right. Which means that, you know, somebody could be put behind bars–someone has already–you know, that I know has already been killed, you know, they were murdered. And then you've got a guy sitting here that's been accused of it, or whatnot. You know, like I said, three years into trial–if they asked me before three years, I might be a little bit more certain that that was the guy, but I'm not–you know, I'm not 100 percent certain now.

Appellant correctly notes that Park did not identify him in court. However, at the time of trial, over three years had passed since the murder occurred. When reviewing the certainty of a witness's identification of a suspect in a lineup, the relevant time period is the time of the lineup.

Finally, the timing of the photographic lineup in this case does not indicate a risk of misidentification. The length of time between the offense and the time Parks made the identification was five days. Five days is not so great a period of time to dull a witness's memory.

Based on the totality of the circumstances, we conclude that the photographic identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Rhodes*, 2018 WL 2112219 , at #3 (citations and footnotes omitted).

Petitioner asserts the method used to identify him during the conversation between the detective and Mr. Parks was unreliable because it was impermissibly suggestive. In particular,

Petitioner states the method was improper because Mr. Parks knew two of the men in the photographs he was shown and would have therefore been unlikely to believe they were the individual he saw running after hearing gunshots.

Initially, the intermediate appellate court concluded that the identification method was not impermissibly suggestive. This conclusion was based on the following: (1) that while Mr. Parks knew two or three of the men in the photograph, he did not know the other two or three men and (2) each of the photographs depicted a person similar in age and build to Petitioner. Petitioner has not identified a Supreme Court decision that calls this conclusion into question. Based on the factors relied on in making this conclusion and the lack of a Supreme Court decision calling this conclusion into question, the conclusion was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

Moreover, the intermediate appellate court analyzed the factors set forth in *Neil v. Biggers*, *supra*, to determine whether, assuming the method of identification was impermissibly suggestive, the identification was nonetheless reliable. The court concluded that four of the five factors weighed in a favor of a finding of reliability. The court did not consider the third factor, the accuracy of the witness's prior description of the criminal.

The evidence cited by the court in reaching this conclusion is persuasive. Mr. Parks stated he spoke to the men that night, had an adequate opportunity to view them, and stated he was close enough to look into Petitioner's eyes. Further, the fact that Petitioner and the shorter man were close to the home of the witness's elderly grandparents gave him reason to pay close attention. In addition, while Mr. Parks stated at the pretrial identification that he was not 100 percent certain the person in Petitioner's photograph was the person he saw on the night of the crime, he stated the man in the photograph looked very familiar and that the nose and eyes were familiar. Finally, the five days that passed between the night of the crime and Mr. Parks's pretrial identification was not a lengthy period of time.

The intermediate appellate court identified and applied the correct legal standard to the testimony regarding the pretrial identification of Petitioner and the admission of State's Exhibit 5. The court's application of the facts to the legal standard was not unreasonable. As a result, Petitioner is not entitled to relief in this matter.

<u>Recommendation</u>

This Petition for Writ of Habeas Corpus should be denied.

<u>Objections</u>

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429(5th Cir. 1996) (*en banc*).

**SIGNED this the 5th day of May, 2023.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE